

Fourth Court of Appeals

San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-20-00410-CV

**IN THE INTEREST OF N.N.R.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-01112
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: January 27, 2021

AFFIRMED

Appellant P.P. appeals the trial court's order terminating his parental rights to his child,
N.N.R.,[1] born 2017. P.P. argues the evidence is legally and factually insufficient to support the
trial court's finding that termination is in N.N.R.'s best interest. We affirm the trial court's order.

## BACKGROUND

In May of 2019, the Department of Family and Protective Services removed N.N.R. from
the home of her mother, A.R., after receiving reports that A.R. used drugs around the child and
was living with a suspected drug dealer and gang member. A.R. identified P.P. as N.N.R.'s father,
but she told the Department she did not know his phone number or address. On May 31, 2019, the

---

[1] To protect the privacy of the minor child, we refer to the child and the parents by their initials. TEX. R. APP. P.
9.8(b)(2).

Department filed a petition to terminate the parental rights of both A.R. and P.P. It also obtained temporary managing conservatorship over N.N.R. and placed her in foster care.

P.P. personally appeared at a June 10, 2019 hearing in this case. The Department created a service plan for him, which he signed on July 12, 2019. The service plan required P.P. to, inter alia, undergo substance abuse and psychological assessments, attend parenting classes, and follow the recommendations of his psychological assessment.

Fourteen months after removal, the trial court held a one-day bench trial at which P.P. appeared. Both A.R. and P.P. filed motions for continuance, but the trial court denied those motions, stating, "A lot of the causes of delay have been brought on by the parents. . . . This is our third setting. And the not readies are denied. We're going forward today." The trial court then heard testimony from: (1) Christina Gallegos-Atarigbe, the Department's caseworker who initially removed N.N.R.; (2) Martine Arreola, the Department's legal caseworker; and (3) P.P. The trial court also took judicial notice of the service plans for both A.R. and P.P. and admitted them as exhibits. After hearing the evidence, the trial court signed an order terminating A.R.'s and P.P.'s parental rights. The trial court terminated P.P.'s rights pursuant to Texas Family Code section 161.002(b)(1) and, "in the alternative," pursuant to Texas Family Code section 161.001(b)(1), finding that P.P. engaged in conduct under subsections (N), (O), and (P) and that termination of P.P.'s parental rights was in N.N.R.'s best interest. P.P. appealed, but A.R. did not.

**ANALYSIS**

While P.P. primarily challenges the legal and factual sufficiency of the evidence supporting the trial court's best interest finding, he also briefly states he "do[es] not believe that the Department met their burden in" showing his parental rights should be terminated under section 161.001(b)(1)(N) or (O). However, P.P. does not challenge the sufficiency of the evidence supporting the trial court's findings under section 161.001(b)(1)(P). Accordingly, subsection (P)

is a valid ground upon which the trial court's judgment could be based. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (holding only one predicate finding under section 161.001(1) is necessary to support a termination order). Consequently, to the extent P.P.'s brief challenges the trial court's findings under subsections (N) and (O), we need not consider that challenge. *See id.* We will therefore consider only whether the evidence supports the trial court's best interest finding.[2]

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate P.P.'s parental rights and that termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d at 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department

---

[2] P.P. also failed to challenge the trial court's finding that termination was warranted under section 161.002(b)(1). However, we need not address that issue because the parties did not raise it and it is not necessary to the final disposition of this appeal. TEX. R. APP. P. 47.1.

presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for

that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

P.P. argues the trial court "ignored" several of the statutory and *Holley* factors and, as a result, the evidence is legally and factually insufficient to show termination was in N.N.R.'s best interest. For the following reasons, we disagree.

### *Legal Sufficiency*

This court has previously considered a parent's delays in beginning his service plan in reviewing a trial court's best interest determination. *See In re R.L.L.*, No. 04-18-00240-CV, 2018 WL 6069866, at *15–16 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.); *see also In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *3 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). Here, the record shows P.P. first appeared in this case on June 10, 2019 and signed his service plan on July 12, 2019. The Department presented evidence that when its legal caseworker, Arreola, took over the case in October of 2019, P.P.'s engagement with his service plan was "nonexistent" and he "went back and forth about the idea of engaging in services" because "he was concerned about the child support." Arreola testified that between October of 2019 and April of 2020, she contacted P.P. every month to try to engage him in his services, but he did not respond to most of those attempts. *See* TEX. FAM. CODE § 263.307(b)(10) (court may consider parent's willingness to cooperate with Department in best interest analysis); *In re A.F.*,

2020 WL 6928390, at *3 (same). She testified that when he did respond, "he stated that he didn't want to engage in services." *See* TEX. FAM. CODE § 263.307(b)(10). Arreola testified P.P. did not engage in services until late April or early May of 2020, approximately eleven months after the Department first sought to terminate his rights. *See In re R.L.L.*, 2018 WL 6069866, at *15. Based on her observations of P.P.'s "lack of engagement, his indecision during the whole time of this case," Arreola testified that she believed reunification with P.P. would not "be in [N.N.R.'s] best interest for permanency." *See id.* at *15–16.

Additionally, a parent's failure to visit a child "on a consistent, regular basis" can support a finding that the parent "was not ready, willing, or able to be a parent to the child." *A.C. v. Tex. Dep't of Family & Prot. Servs.*, 577 S.W.3d 689, 706 (Tex. App.—Austin 2019, pet. denied); *see also In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (parent's past conduct is probative of future conduct in best interest analysis). Here, the Department presented evidence that P.P. did not have any visits with N.N.R. between August of 2019 and May of 2020; he visited with N.N.R. three times out of a possible thirty visits that were available to him in 2020; and N.N.R. "has a difficult time during the visits." Moreover, Arreola testified that while P.P. had engaged in parenting classes, he had only completed six out of fourteen sessions. *See A.C.*, 577 S.W.3d at 706.

Finally, evidence that a parent fails "to fully engage in and complete drug treatment" can support a finding that termination is in a child's best interest. *In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.). Here, the Department presented evidence that although P.P. completed the psychological and substance abuse assessments required by his service plan, he did not attend the substance abuse treatment sessions or complete the counseling sessions recommended as a result of those assessments. *See id.* Additionally, Arreola testified that although P.P. told her he was receiving mental health

treatment, he did not comply with her requests for paperwork confirming that treatment. *See In re N.T.*, 474 S.W.3d 465, 478–79 (Tex. App.—Dallas 2015, no pet.) (considering parent's failure to demonstrate compliance with mental health treatment).

When viewed in the light most favorable to the trial court's judgment, this evidence would allow a reasonable factfinder to conclude that termination of P.P.'s parental rights was in N.N.R.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. As a result, this evidence is legally sufficient to support the trial court's best interest finding, and we overrule P.P.'s complaint to the contrary. *See id.*

*Factual Sufficiency*

In reviewing the factual sufficiency of the evidence supporting the best interest finding, we must also review evidence that is contrary to the finding. *In re J.O.A.*, 283 S.W.3d at 345. Here, while P.P. acknowledged that he did not engage in his services during the first eleven months of this case, he testified this delay occurred because he was trying to obtain mental health treatment "so [he] could be a better father for" N.N.R. He also testified he had recently started taking a new medication that helped him move forward with his services. He disputed Arreola's testimony about the number of visits that were available to him in 2020, stating, "I've not had an opportunity to get nowhere near 30 visits." He also testified that his failure to respond to Arreola's communications occurred because Arreola had been contacting P.P.'s husband, who works out-of-town, instead of P.P. himself. Finally, while it was undisputed that P.P. did not complete the personal and couples counseling recommended in his psychological assessment, both he and Arreola testified that P.P. did not receive a referral for those services until shortly before trial. While P.P. offered no reason for his failure to engage in the recommended outpatient substance abuse treatment, he stated that if the court gave him additional time to complete his services, he believed he could do so.

Arreola testified P.P. has a stable home that "appears appropriate." She also stated P.P. showed he was "very protective" by requesting video visits with N.N.R. after his husband was diagnosed with COVID-19. She further noted that during the three visits P.P. had with N.N.R., he was "positive," "really trie[d] to engage her," and tried "to make the visit appropriate." However, she testified that P.P. lacks employment or a support system of his own, relying instead on the financial and social support of "his husband and people related to his husband." And, as noted above, Arreola testified that N.N.R. struggled with the visits with P.P. and that the visits were limited in number and did not occur until shortly before trial.

After reviewing the entire record, we cannot say the evidence that is contrary to the trial court's best interest finding "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" about the truth of that finding. *In re J.F.C.*, 96 S.W.3d at 266. When this case went to trial, N.N.R.—who was nineteen months old when the Department removed her from her mother's home—had been in foster care for more than a year. The trial court noted that this means "[N.N.R] has spent half her life in foster care," and it expressed concerns about the lack of permanency in N.N.R.'s life. *See* TEX. FAM. CODE § 263.307(b)(2). The trial court also explained that the trial had been reset twice due to P.P.'s "evasiveness" in deciding whether to assert his parental rights. *See id.* § 263.307(b)(11). Although Arreola and P.P. offered conflicting evidence about the reasons for the delays in this case, the trial court could have believed Arreola over P.P., and we must defer to that credibility determination on appeal. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied).

Based on the evidence presented at trial, the trial court could have formed a firm belief or conviction that termination of P.P.'s parental rights was in the best interest of N.N.R. *See In re J.F.C.*, 96 S.W.3d at 266; *In re S.L.M.*, 513 S.W.3d at 750. We therefore overrule P.P.'s sole issue and hold that legally and factually sufficient evidence supports the trial court's finding, by clear

and convincing evidence, that termination of P.P.'s parental rights was in the best interest of N.N.R. *See In re S.L.M.*, 513 S.W.3d at 750.

**CONCLUSION**

We affirm the trial court's order of termination.

Beth Watkins, Justice